IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KELLY J. YOX, an individual,

              Plaintiff,

    v.

PROVIDENCE HEALTH PLAN,
an Oregon non-profit corporation,

              Defendant.

No. 3:12-cv-01348-HZ

OPINION & ORDER

John C. Shaw
Megan E. Glor
MEGAN E. GLOR, ATTORNEYS AT LAW, PC
621 SW Morrison, Suite 900
Portland, OR 97205

    Attorneys for Plaintiff

Arden J. Olson
Aaron T. Bals
HARRANG LONG GARY RUDNICK PC
360 East 10th Ave, Suite 300
Eugene, OR 97401-3273

    Attorneys for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Kelly J. Yox brings this ERISA action against Defendant Providence Health Plan. Plaintiff experienced a seizure-induced fall and Defendant denied her medical claim for dental treatment. Plaintiff moves for summary judgment [44], and Defendant cross-moves for judgment [40] on the merits under Rule 52. I find that Defendant's denial was an abuse of discretion because Defendant had a structural conflict of interest, violated ERISA regulations, and rendered its decision without explanation or plausible support. Therefore I grant Plaintiff's motion for summary judgment and deny Defendant's motion.

## BACKGROUND

Plaintiff was a beneficiary of a group health plan ("Plan") maintained by her husband's employer, Harrison Electrical Workers Trust, and administered by Defendant under the Employee Retirement Income Security Act of 1974 ("ERISA"). AR 000001–159. On March 5, 2011, Plaintiff had a seizure and fell. AR 000231. Three days later, Plaintiff visited Willamette Dental, where she was diagnosed with a right mandibular fracture. Id. On March 15, 2011, Dr. Brett Ueeck, M.D., D.M.D., performed an open reduction and internal fixation on Plaintiff's jaw. AR 000236, 000239. Plaintiff developed an infection, and returned to Dr. Ueeck two weeks after the original surgery for a second surgery—a closed reduction. AR 000239–40.

Plaintiff visited Dr. Mohammed Saleh, D.M.D., of Dental Dynamics, on August 4, 2011. AR 000244. In a clinical evaluation letter dated October 10, 2011, Dr. Saleh recommended further treatment, including: (1) elimination of active caries and restoration of teeth, (2) extraction of hopeless dentition, (3) tooth replacement via endosseous implants and fixed prosthetics, (4) ridge augmentation with bone graft, and (5) reprogramming head, neck and facial muscles to alleviate strain on the temporomandibular joint and supporting structures. AR

2 - OPINION & ORDER

000244–47. Dr. Saleh opined that Plaintiff's complications were "a result of jaw fracture" and "associated with" her jaw surgeries and infections after the fall. AR 000246. Dr. Saleh submitted his clinical evaluation letter as a pre-authorization request to Defendant for coverage of Plaintiff's services. AR 000243. On October 11, 2011, Defendant sent Plaintiff a letter denying Dr. Saleh's pre-authorization request because the services were "determined to be dental rather than medical, and, therefore not covered by Providence Health Plan medical insurance." AR 000251.

Plaintiff appealed Defendant's October 11, 2011 denial in an undated letter, AR 000252, which was accompanied by a request for appeal from Dental Dynamics and another clinical evaluation letter from Dr. Saleh. AR 000253–57. Plaintiff stated in her appeal that all of the damage was "caused by the fall[,]" a medical accident, and the requested services should therefore be covered under the "because of trauma" clause in Defendant's Limited Dental Services section of the Plan. AR 000252. Dr. Saleh's accompanying clinical evaluation letter included services not requested in the letter dated October 10, 2011, such as extraction and socket preservation bone grafts at the site of six additional teeth as well as fixed partial denture work for twelve additional teeth. AR 000244–47, 000254–57. Defendant upheld the previous denial, notifying Plaintiff of its decision in a letter dated October 31, 2011. AR 000261. Defendant reiterated that "the requested dental extractions and implants are dental in nature[.]" Id.

Plaintiff requested a second level appeal. AR 000262. On November 25, 2011, Dr. Saleh wrote another letter to Defendant stating, "The present conditions are a direct, but late effect of the trauma sustained on March 05, 2011." AR 000275. On November 30, 2011, Defendant replied to Plaintiff's second level appeal request and notified her that the Grievance Committee

3 - OPINION & ORDER

would meet to review Plaintiff's case on December 9, 2011. AR 000276. At the meeting, which Plaintiff attended, the Grievance Committee discussed tooth #28, noting the damage to it was a result of the trauma and therefore Defendant should pay for its implant replacement. AR 000281. The Grievance Committee also recommended that Plaintiff be evaluated by the Dental School at Oregon Health & Science University ("OHSU") to determine the condition of Plaintiff's teeth prior to and after her fall. AR 000281–82. Plaintiff was not evaluated by OHSU, however after the Grievance Committee meeting, Plaintiff's primary dental provider sent Defendant a letter describing Plaintiff's dental state prior to the fall. AR 000283.

On January 13, 2012, Defendant sent Plaintiff its final decision, which "authorize[d] the removal and implant for tooth #28 due to the trauma caused by [Plaintiff's] accident in March 2011[,]" but otherwise upheld its previous denial. AR 000284. The final decision stated that Plaintiff "may have the right to have an independent review of certain final decisions made by [Defendant]" and enclosed an explanation of Defendant's "Grievance and Appeal Rights." AR 000284–86. On January 22, 2012, Plaintiff requested an external review by an Independent Review Organization ("IRO"). AR 000288. The IRO notified Plaintiff in a letter dated February 22, 2012 that it upheld Defendant's decision based on a review of the documentation submitted. AR 000420–24.

## STANDARDS

Traditionally, summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). However,

> Traditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard. Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal

> question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929–30 (9th Cir. 2012) (citations, quotation marks omitted).  In addition, "judicial review of benefits determinations is limited to the administrative record—that is, the record upon which the plan administrator relied in making its benefits decision[.]"  Id. at 930 (internal quotation marks omitted).  "[W]hen a court must decide how much weight to give a conflict of interest under the abuse of discretion standard[,] . . . the court may consider evidence outside the [administrative] record."  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc).  In considering "evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest[,]" id., traditional rules of summary judgment apply, and "summary judgment may only be granted if after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact."  Stephan, 697 F.3d at 930 (internal quotation marks omitted).  "[T]he decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise."  Abatie, 458 F.3d at 970.

## PROCEDURAL ISSUES

I.  Standard of Review

Both parties agree that the appropriate standard of review is abuse of discretion.  Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s MSJ") 13; Mem. Supp. Def.'s Cross Mot. J. ("Def.'s MJ") 15–16.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  When the administrator has discretionary authority, the

court "review[s] the administrator's decision for abuse of discretion[.]" Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 673 (9th Cir. 2011). "Under this deferential standard, a plan administrator's decision 'will not be disturbed if reasonable.'" Stephan, 697 F.3d at 929 (quoting Conkright v. Frommert, 559 U.S. 506, 521 (2010)). "This reasonableness standard requires deference to the administrator's benefits decision unless it is (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

Here, Defendant had discretionary authority to determine eligibility for benefits and construe terms of the Plan, which states, "Benefits shall be payable to a Member under the ERISA plan and this Group Contract only if Providence Health Plan, in its discretion, determines that such benefits are payable." AR 000024. Therefore, I will review Defendant's decision for abuse of discretion.

Although Plaintiff agrees that the abuse of discretion standard is appropriate, Plaintiff argues that the court should review Defendant's decision with additional "skepticism" because of Defendant's structural conflict of interest. Pl.'s MSJ 18. When "the insurer acts as both funding source and administrator[,]" there is a structural conflict of interest that "must be weighed as a factor in determining whether there is an abuse of discretion." Salomaa, 642 F.3d at 674. Defendant "both administers the plan and funds it," and therefore operates under a structural conflict of interest. Abatie, 458 F.3d at 967; Def.'s Resp. 10. I will consider this conflict of interest as a factor and assign it appropriate weight in my review for abuse of discretion.

II.   Rule 52 Trial on the Administrative Record Versus Rule 56 Summary Judgment

Plaintiff argues that a motion for summary judgment under Rule 56 is appropriate in an ERISA case subject to the abuse of discretion standard of review. Pl.'s Resp. 3–4. Defendant

argues that the court has discretion to decide an ERISA abuse of discretion case under either Rule 56 or Rule 52, and that, in this case, Rule 52 is more efficient than Rule 56. Def.'s Reply 3. "The Ninth Circuit has often held that in an ERISA benefits case, where the court's review is for abuse of discretion, summary judgment is a proper 'conduit to bring the legal question before the district court.'" Rabbat v. Standard Ins. Co., 894 F. Supp. 2d 1311, 1313 (D. Or. 2012) (quoting Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999)). "[W]hen applying the *de novo* standard in an ERISA benefits case, a trial on the administrative record [under Rule 52], which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute." Id. at 1314. However, neither the rule through which the parties move nor the standard of review definitively determines the procedure. See id. at 1313–14.

As previously explained, the standard of review is abuse of discretion. Defendant argues that if the court must resolve factual disputes and make credibility determinations regarding the effect of Defendant's structural conflict of interest on the denial of benefits, then a trial on the administrative record is more appropriate than summary judgment. Def.'s Reply 3. First, there are no factual disputes to resolve or credibility determinations to make regarding Defendant's conflict of interest. I am weighing the conflict of interest itself as a factor in the abuse of discretion analysis. Salomaa, 642 F.3d at 674. Second, at the Rule 16 Conference on April 4, 2013, the parties agreed to proceed with motions for summary judgment, not a trial based on the administrative record. Dkt. #34. Therefore I will consider these motions under Rule 56.

III. Waiver

Defendant argues that Plaintiff waived her right to sue in district court. Def.'s MJ 14. "Waiver is the intentional relinquishment of a known right with knowledge of its existence and

the intent to relinquish it." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1026 (9th Cir. 2001). ERISA regulations require that notification of an adverse benefit determination

> set forth, in a manner calculated to be understood by the claimant . . . [a] description of the plan's review procedures and the time limits applicable to such procedures, *including a statement of the claimant's right to bring a civil action under section 502(a) of the Act* following an adverse benefit determination on review[.]

29 C.F.R. § 2560.503-1(g)(1) (emphasis added).

Defendant argues that Plaintiff waived the right to bring a civil action by electing to appeal the denial of benefits to an IRO. Def.'s MJ 14. Plaintiff claims she did not know she had a right to file a lawsuit under ERISA Section 502(a), and therefore she could not have waived that right. Pl.'s Resp. 7. To demonstrate that Plaintiff knew or should have known of her right to bring a civil action, Defendant points to the Grievance and Appeal Rights enclosure referenced in all of the decision letters sent to Plaintiff. AR 000261, 000251, 000284–86. In the decision letters, Plaintiff is told that she "may have the right to have an independent review of certain final decisions made by [Defendant]" and is directed to read the Grievance and Appeal Rights enclosure. AR 000284. The Grievance and Appeal Rights enclosure is two-pages in length, has several single-spaced paragraphs, and uses a smaller than normal font. At the end of the "External Review" paragraph on the second page, the relevant language states that "[b]y electing to submit your appeal to an IRO, you are also agreeing to be bound by and to comply with the IRO decision regarding your appeal in lieu of appealing to a state or federal court."[1] AR 000286. The External Review paragraph is focused exclusively on explaining the IRO process.

---

[1] Notably, although other language within the paragraph is bolded for emphasis, this sentence is not.

I find that neither the letters nor the Grievance and Appeal Rights enclosure "includ[es] a *statement of the claimant's right* to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]" 29 C.F.R. § 2560.503-1(g)(1). The language that Defendant points to in the Grievance and Appeal Rights enclosure is not a statement of Plaintiff's right to bring a civil action. Defendant argues Plaintiff should have inferred this right based on that language. I disagree. In addition to being hidden in a paragraph that focuses on the IRO process, a statement that requires Plaintiff to infer that she has a right to sue does not meet the requirements of the regulations. I find that Defendant's notification was inadequate to alert Plaintiff to her right to file a civil action and thus, Plaintiff did not waive her right to sue.

IV.    Administrative Record

The parties dispute the scope of the administrative record that should be reviewed. Defendant requests that the court also consider the IRO decision. Def.'s MSJ 16–17. The record for judicial review of benefits determinations under ERISA is "the record upon which the plan administrator relied in making its benefits decision[.]" Stephan, 697 F.3d at 930. Because the IRO decision was not part of the record Defendant relied upon in making its decision, I will not consider the IRO decision as part of the administrative record in determining whether Defendant abused its discretion by denying Plaintiff's claim.

V.    Scope of Medical Claim

The parties disagree over the scope of Plaintiff's claim for benefits. On October 10, 2011, Plaintiff's doctor, Dr. Saleh, submitted a clinical examination report that recommended treatment for teeth 18 through 28. AR 000245. Dr. Saleh noted that Plaintiff sought treatment for "jaw trauma" as a result of a seizure. Id. Defendant denied the request for treatment of teeth 18 through 28. AR 000251. On October 17, 2011, Dr. Saleh provided another clinical

9 - OPINION & ORDER

examination report in support of Plaintiff's appeal of the denial. AR 000255. The discussion and analysis of the second report was nearly duplicative of the first report. However, the recommended treatment was not limited to teeth 18 through 28, but had expanded to include teeth two through 14 as well. Id.

Defendant argues that it was not properly alerted to the expansion of Plaintiff's claim, and thus, the scope of the claim is limited to the treatment of teeth 18 through 28. Def.'s Resp. 16 n1. Plaintiff disagrees, and asserts that she had notified Defendant of the expanded claim in a letter to the Appeals and Grievances Department. AR 000252. In the October 17, 2011 letter, Plaintiff points to the following paragraph as providing notice to Defendant:

> I had a claim submitted by Optimal Dental…that I never saw…and then found out that the claim submitted never said a thing about the teeth that were damaged during the fall….all of my file to be submitted was not complete. …Optimal dental…will re-submit the remaining files that were supposed to have gone during the initial submittal.

Id. On Defendant's "Appeal Review Form," only teeth 18 through 28 were noted in the request. AR 000258. Plaintiff argues that Defendant knew about the expanded scope of the claim because Dr. Saleh's second report was included in the appeal. Pl.'s Reply 6.

It is not apparent that Defendant was sufficiently notified of the expanded claim. Plaintiff's appeal letter only indicates that files were missing, not that claims for additional teeth would be supplemented. In addition, Plaintiff's statement that Dr. Saleh's initial recommendation did not include teeth that were damaged from the fall was incorrect. Dr. Saleh indicated in his report that he understood that Plaintiff was seeking a consultation for jaw trauma resulting from a seizure. Finally, the purpose Plaintiff's appeal was to review the initial denial for teeth 18 through 28. Defendant had not yet been presented with a claim for treatment for teeth two through 14, and thus, there was no decision to review on appeal. I find that the scope

10 - OPINION & ORDER

of Plaintiff's claim is limited to the initial recommendation for treatment by Dr. Saleh for teeth 18 through 28.

## DISCUSSION

Under the abuse of discretion standard, the Administrator's denial of benefits will stand unless it is illogical, implausible, or without support in the record. Stephan, 697 F.3d at 929. Plaintiff asserts three arguments to demonstrate Defendant's abuse of discretion in denying her medical claim for dental treatment. First, Plaintiff claims Defendant relied on conclusions of file reviewers rather than accepting the conclusions of experts who examined Plaintiff or having its own expert examine Plaintiff. Second, Plaintiff argues Defendant violated numerous ERISA regulations which denied Plaintiff a full and fair review and demonstrates the implausibility of Defendant's decision. Finally, Plaintiff asserts that Defendant's denial of benefits was unsupported by rational evidence and therefore was illogical. Defendant disputes Plaintiff's assertions and argues that its decision was logical and plausible because it was adequately explained and supported with evidence in the record.

I.   Reliance on File Reviewers

ERISA does not "impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003). "Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Id. at 834. Results of an in-person evaluation conducted by the administrator may serve to explain why an administrator rejects the opinion of a treating physician, but such results are not required in order to reject a treating physician's opinion. See id. at 832. "[W]hether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's

11 - OPINION & ORDER

existing medical records," is one factor for the reviewing court to consider when determining whether the administrator abused its discretion. Montour v. Hartford Life & Accident Ins. Co., 588 F.3d 623, 630 (9th Cir. 2009).

Plaintiff argues that Defendant abused its discretion by conducting a "pure paper" review of Plaintiff's claim. Pl.'s MSJ 23. Defendant replies that the paper review of Plaintiff's file was sufficient and that it had no duty to independently examine Plaintiff. Def.'s Resp. 11–13. While Defendant was not obliged to conduct an in-person examination of Plaintiff, Defendant did not explain why it rejected Dr. Saleh's opinion. Dr. Saleh noted in his October 10, 2011 clinical evaluation letter that the treatment sought was to reduce or eliminate complications Plaintiff was experiencing "as a result of jaw fracture." AR 000246, 000251. Defendant did not rebut Dr. Saleh's opinion that Plaintiff's dental problems were caused by the trauma of the fall. See infra Part III. By ignoring Dr. Saleh's opinion, Defendant arbitrarily refused to credit Plaintiff's reliable evidence. Coupled with the fact that Defendant relied on a paper review of Plaintiff's records, this weighs in favor of finding that Defendant abused its discretion.

II. ERISA Violations

ERISA regulations "set[] forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries[.]" 29 C.F.R. § 2560.503-1(a). "A procedural irregularity [in violation of ERISA regulations], like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion."[2] Abatie, 458 F.3d at 972. "When an administrator can show that it has engaged

---

[2] Defendant argues that "[t]he Ninth Circuit has held that substantial compliance with the standards of 29 C.F.R. § 2560.503-1 is sufficient and constitutes 'full and fair review.'" Def.'s Resp. 25. Defendant is incorrect. Defendant cites Brogan v. Holland to support its contention, however Brogan is a Fourth Circuit case. 105 F.3d 158, 164 (4th Cir. 1997). While many

in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity." Id. (internal quotation marks omitted). "A more serious procedural irregularity may weigh more heavily." Id. "When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well," the court gives the administrator's decision no deference and reviews it *de novo*. Id. at 971.

Plaintiff asserts that Defendant violated numerous ERISA regulations, sometimes repeatedly, which denied Plaintiff a full and fair review of her claim and constituted an abuse of discretion. Pl.'s MSJ 28. Defendant replies that it substantially complied with ERISA requirements. Def.'s Resp. 25.

While the "irregularities" Plaintiff asserts do not amount to a "wholesale and flagrant violation of the procedural requirements of ERISA," they weigh in favor of a finding that Defendant abused its discretion. Defendant's notifications to Plaintiff did not meet the minimum requirements set forth in the regulations. For instance, 29 C.F.R. § 2560.503-1(j)(2) required Defendant to reference the specific plan provision on which it based its decision. Defendant's notifications substantially quoted from the Limited Dental Services section of its Plan, but did not reference the specific plan provision. AR 000251, 000284. Similarly, 29 C.F.R. § 2560.503-1(j)(5)(i) required that Defendant notify Plaintiff if it relied upon an internal rule, guideline, protocol, or other similar criterion. Defendant did not notify Plaintiff that it relied upon its

---

circuits apply the substantial compliance test, e.g., Robinson v. Aetna Life Ins. Co., 443 F.3d 389, 392–93 (5th Cir. 2006) (listing Fifth, Sixth, Seventh, and D.C. Circuits as applying substantial compliance to ERISA violations), Abatie is authoritative in this circuit. 458 F.3d at 971–73.

13 - OPINION & ORDER

policy governing "Dental Services and Restoration of Head and Facial Structures and Repair of Cleft Palate" during Plaintiff's second level appeal. AR 000188–89, 000280. In addition, as explained in the waiver discussion above, Defendant did not notify Plaintiff of her right to bring a civil suit under ERISA Section 502(a), as required by 29 C.F.R. § 2560.503-1(g)(1)(iv) and (j)(4). AR 000286.

Defendant's review of Plaintiff's claim does not lend itself to judicial scrutiny as easily as its notifications do. Plaintiff's primary complaint about Defendant's deficient review of her claim is that the health care professionals who decided her request and appeals were not qualified to do so. Pl.'s MSJ 29–30. If the denial is based on a medical judgment, 29 C.F.R. § 2560.503-1(h)(3)(iii) requires that the administrator "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment[.]" The Ninth Circuit has found an administrator lacked reasonable basis for denying a claim, and thereby abused its discretion, when an ERISA administrator relied on the opinions of doctors who lacked expertise in autism, Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 537–38 (9th Cir. 1990), and ophthalmology, Zavora v. Paul Revere Life Ins. Co., 145 F.3d 1118, 1122–23 (9th Cir. 1998). Here, Defendant relied upon the opinions of Drs. James MacKay, M.D., Gerald Corn, M.D., and David Pass, M.D., during the initial denial and first and second level appeals, respectively. AR 000250, 000258, 000281. Dr. MacKay is an internist, Dr. Corn a family practitioner, and Dr. Pass an anesthesiologist. Pl.'s MSJ 6. While the plan is medical in nature, and provides only limited dental services, Defendant did not consult with a doctor who had training and experience related to Plaintiff's claims for dental reconstruction.

14 - OPINION & ORDER

In conclusion, while the procedural irregularities alone neither amount to an abuse of discretion nor alter the standard of review, they weigh in favor of a finding of abuse of discretion.

III.  Unsupported by Rational Evidence

ERISA regulations specify the manner and content of the notification that a plan administrator is required to send to a claimant upon making an adverse benefit determination. The requirements provide, in relevant part,

> The notification shall set forth, in a manner calculated to be understood by the claimant (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

29 C.F.R. § 2560.503-1(g)(1).  "In simple English, what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries."  Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997) (discussing former 29 C.F.R. § 2560.503-1(f)).

> While a health plan administrator may—indeed must—deny benefits that are not covered by the plan, it must couch its rulings in terms that are responsive and intelligible to the ordinary reader.  If the plan is unable to make a rational decision on the basis of the materials submitted by the claimant, it must explain what else it needs.  If ERISA plan administrators want to enjoy the deference to which they are statutorily entitled, they must comply with these simple, common-sense requirements embodied in the regulations and our caselaw.

Id. at 1465 (citations omitted).

Plaintiff argues that Defendant's denial was illogical because (1) Defendant provided no evidence to rebut Plaintiff's treating physicians' expert opinions, (2) Defendant provided no

15 - OPINION & ORDER

evidence to support its own decision, and (3) the perfunctory statements Defendant provided in its decisions were not supported by the record. Defendant disagrees, claiming it adequately explained its decisions, which were supported by Plaintiff's pervasive dental problems prior to the seizure-induced fall as evidenced in the record.

    A.  Initial Denial

Defendant's initial denial letter provides little explanation for its decision to deny benefits. The letter states that "this request was not approved as it does not meet medical necessity criteria. . . . [It was] determined to be dental rather than medical[.]" AR 000251. The letter then essentially quotes the Plan's language that "[s]ervices to treat existing tooth decay, periodontal conditions and deficiencies in dental hygiene are not covered[.]" Id.; AR 000100 (Limited Dental Services section of Plan excludes "[s]ervices to treat tooth decay, periodontal conditions and deficiencies in dental hygiene[.]"). The denial does not explain why the request does not meet medical necessity criteria, or why the services are dental rather than medical.

The letter also notes that "[t]he documentation received indicates that the tooth traumatized in your fall (tooth #28) was treated by being removed." AR 000251. The language implies that Defendant believed that tooth #28 was the only tooth traumatized in the fall. But addressing that individual tooth does not provide support for denying treatment of the other teeth, all of which Dr. Saleh attributed to the jaw fracture and complications arising from it. AR 000246. Defendant did not explain why the requested services were dental or how Plaintiff's dental problems prior to the fall caused the complications that Dr. Saleh sought to treat.

According to internal documentation, Dr. James MacKay, internist and Medical Director for Defendant, reviewed and denied Plaintiff's request, noting that "the work being done is not due to the trauma." AR 000250. This statement is also essentially a recitation of Defendant's

16 - OPINION & ORDER

Plan and does not explain how Plaintiff's extensive dental history prior to the fall contributed to the complications that Dr. Saleh sought to treat. AR 000100 (Plan states: "Covered services include restoration and management of head and facial structures, including teeth, dental implants and bridges, that . . . are defective because of trauma[.]"). The conclusory statements that Plaintiff's treatment needs are "dental rather than medical[,]" are "not due to the trauma[,]" and do "not meet medical necessity criteria" do not sufficiently explain Defendant's initial denial.

### B. First Level Appeal

The first level appeal letter sent to Plaintiff provides even less explanation than the initial denial letter, merely quoting the plan and concluding "[o]ur Medical Director has determined that the requested dental extractions and implants are dental in nature and as such are not covered under your medical plan benefits." AR 000261. Another Medical Director for Defendant, Dr. Gerald Corn, noted in internal documentation that "it is difficult to believe that the extensive list of dental problems this member has were all caused by her mandibular traumatic fracture. She had already had multiple dental implants prior to her fall." AR 000258. Again, Defendant provides no explanation for its conclusory statements to uphold its denial. A mandibular traumatic fracture causing the extensive list of dental problems may be "difficult to believe," but that is not a logical or plausible reason to deny benefits.

### C. Second Level Appeal

The Plan dictates that the second level appeal is reviewed by its Grievance Committee, which is "made up of individuals not involved in the initial grievance or appeal, and consists of Providence Health Plan staff and one or more community representatives." AR 000286. Before Plaintiff met with the Grievance Committee on December 9, 2011, Dr. Saleh wrote another

17 - OPINION & ORDER

letter, dated November 25, 2011, unambiguously stating that "[t]he present conditions are a direct, but late effect of the trauma sustained on March 05, 2011." AR 000275. At the hearing, the Committee discussed Plaintiff's pre-seizure dental history as well as the seizure, jaw fracture and complications that arose since. AR 000281–82. The Committee decided during the hearing to pay for the implant of position #28 because its removal was "due to trauma." AR 000281.

The Committee also recommended that Plaintiff go to "OHSU Dental School for an exam and review . . . to determine what was damaged prior/after accident." AR 000282. Plaintiff did not go to OHSU for an exam, but Plaintiff had her primary dental office send a letter responding to Defendant's concerns about Plaintiff's dental condition prior to the fall.[3] AR 000283. Dr. Melanie Grant, D.M.D., wrote a letter on December 30, 2011, briefly summarizing Plaintiff's treatment history with Willamette Dental Group and discussing treatments between February 20, 2010, and February 1, 2011. Id. The letter stated specifically that "teeth #s 8, 9, 11, 12, 25, 26, 27 and 28 did not have any documented mobility or periodontal concerns prior to March 2011." Id. In addition, "slight mobility was charted for teeth #s 19 and 21[.]" Id.

Nonetheless, on January 13, 2012, Defendant sent Plaintiff a final decision, upholding the previous denials for all but tooth #28, discussed at the Grievance Committee meeting. AR 000284. The final decision letter noted that "[t]he latest information we received from Melanie Grant was insufficient in determining the conditions of your teeth prior to your accident in March 2011." Id. The letter further stated that "[o]ur review indicates that the trauma you experienced was not the cause, nor did it create the need for the removal of the teeth[.]" Id.

---

[3] The parties dispute why Plaintiff was never examined at the OHSU Dental School. However, Plaintiff responded to Defendant's concerns about her condition prior to and after the fall with the letter from Dr. Grant. AR 000283. There is no evidence in the record that Defendant found Dr. Grant's opinion inadequate, such that an examination at OHSU was still required.

Although Defendant provided more information in this letter than in any of its previous letters, it still does not explain why the committee rejected Plaintiff's evidence. Defendant could not simply dismiss Dr. Grant's letter as "insufficient." "If the plan is unable to make a rational decision on the basis of the materials submitted by the claimant, it must explain what else it needs." Booton, 110 F.3d at 1465. "[T]o deny the claim without explanation and without obtaining relevant information is an abuse of discretion." Id. at 1464. Here, throughout the entire administrative process Defendant denied the claim without explanation and without obtaining relevant information.

Defendant further argues that Dr. Saleh's letters did not establish that Plaintiff's treatment needs "occurred at the time of the trauma[,]" or that her teeth were "damaged *during the fall*." Def.'s Reply 6, 9. But the Limited Dental Services section of the Plan does not require that the damage "occur at the time of trauma," or "during" trauma; it states "defective *because of trauma*[.]" AR 000100 (emphasis added). Dr. Saleh expressed his opinion that the services for which he sought authorization were to fix Plaintiff's teeth that were defective because of the trauma of her seizure-induced fall. Defendant still never explained how Plaintiff's requested services were not because of that trauma.

IV.   Weighing the Factors

Given Defendant's structural conflict of interest, reliance on file reviewers, violations of ERISA requirements, and failure to explain its decision, I find that Defendant abused its discretion in denying Plaintiff's October 10, 2011 pre-authorization request and in its decision to uphold the denial in subsequent appeals.

/ / /

/ / /

19 - OPINION & ORDER

## CONCLUSION

Based on the reasons above, Plaintiff's motion for summary judgment [44] is granted and Defendants' motion for judgment under Rule 52 [40] is denied.

IT IS SO ORDERED.

Dated this __31__ day of __Dec.__, 201_3_.

*/s/ Marco Hernandez*
MARCO A. HERNANDEZ
United States District Judge